**STATE of Minnesota, Plaintiff,**

v.

**Richard Joseph JACOBSON, Defendant.**

No. A03–1782.

Court of Appeals of Minnesota.

June 15, 2004.

Joseph S. Friedberg, Minneapolis, MN; and Lisa L. Peralta, Minneapolis, MN, for defendant.

Mike Hatch, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Assistant County Attorney, Hastings, MN, for plaintiff.

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and FORSBERG, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

## OPINION

RANDALL, Judge.

The state charged defendant Richard Jacobson with conspiracy to procure unlawful voting and conspiracy to commit forgery. Defendant pleaded not guilty and filed a motion to dismiss the complaint. The district court denied the motion to dismiss, and later granted the state's motion to suppress evidence relevant to defendant's defense that he relied on the advice of counsel and on an official interpretation of the law when he devised a plan to get voters to list his business address as their place of residence. The district court concluded that any reliance on the advice of counsel and/or on an official interpretation of the law was unreasonable as a matter of law. The district court did not explicitly address whether Minnesota recognizes the defenses of reliance on the advice of counsel and on an official interpretation of the law. Instead, the court concluded that defendant's reliance on the defenses was unreasonable and excluded any evidence relating to the defenses on that basis. At defendant's request, the district court certified as important and doubtful the questions of (1) "whether the defenses of reliance on advice of counsel and on an official interpretation are available to the Defendant under Minnesota law," and (2) "whether the defenses of reliance on advice of counsel and on an official interpretation are available to Defendant as a matter of law given the District Court's finding that any reliance was not reasonable."

## FACTS

At the time of the events alleged in the complaint, defendant Richard Joseph Jacobson was the owner of Jakes, an adult men's club located at 15981 Clayton Avenue, in Coates. On October 8, 2002, Jakes was closed by court order for operating a sexually oriented business in violation of a city ordinance.

Three days later, the Dakota County Auditor's Office reported that it had received 93 voter-registration cards listing Jakes as the voters' place of residence. The registration cards were dated between September 29, 2002, and October 4, 2002, and were received in connection with municipal elections.

On October 14, investigators conducted a search of Jakes and defendant's motor vehicle to determine the identities of individuals residing at Jakes. Officers found no evidence suggesting that people were residing at Jakes. Inside the building, however, officers located 13 blank voter-registration cards and two completed voter-registration cards, listing Jakes as the signatories' place of residence. Inside defendant's vehicle, officers found 26 blank voter-registration forms and a highlighted copy of Minnesota voter-registration statutes.

Two days after the search, defendant was charged with conspiracy to procure unlawful voting and conspiracy to commit forgery. The complaint alleged that, between September and October 2002, defendant solicited people to fill out, sign, and file voter-registration cards falsely listing Jakes as the voter' place of residence, in an attempt to determine or influence the outcome of the elections. Defendant pleaded not guilty to the charges.

In February 2003, defendant filed a motion to dismiss the complaint on the ground that "the statutes prohibiting forgery and unlawful voting are unconstitutionally vague as applied to defendant when considered in light of other voting statutes." Defendant argued that the statutes regarding the charged offenses and those related to election laws contained "inexplicably contradictory definitions of

prohibited behavior." In connection with his motion, defendant submitted an affidavit in which he stated that, for the past several years, he had retained an attorney to represent him in various civil matters. Defendant indicated that, in July 2002, his civil attorney showed him a copy of a letter from Chief Deputy Dakota County Attorney Phillip Prokopowicz[1] to Minneapolis Assistant Clerk and Director of Elections Suzanne Griffin. The letter concerned an investigation into the alleged violation of voter-registration and election laws by various Minneapolis police officers. In the letter, Prokopowicz stated that there was no evidence that the officers had violated election laws when they registered to vote listing their work address rather than their home address. The affidavit also indicated that his civil attorney, Randall Tigue, showed defendant a book containing Minnesota's voting and elections laws. Defendant asserted that "[w]ith [his attorney's] counsel and advice, and relying on a review of Minnesota's election laws and the letter by Mr. Prokopowicz," he and several of his employees "devised a plan to get people to register to vote using Jakes as a residence."

The district court denied defendant's motion to dismiss the complaint. Claiming that reliance on the advice of counsel is not a recognized defense in Minnesota, the state moved to suppress (1) any documentation, testimony, or reference to a complaint alleging violations of voter-registration election laws by various Minneapolis police officers, and (2) any documentation, testimony, or reference to the disposition of the complaint. Defendant objected to the motion, arguing that the evidence was relevant to his defense that he relied on

the advice of counsel and on an official interpretation of the law.

At the suppression hearing, the state indicated that the motion to exclude covered the letter Prokopowicz sent to Griffin regarding the disposition of the election-law complaint, as well as expected testimony from his civil attorney regarding the letter and any advice he may have given defendant regarding Minnesota voter-registration and election laws. The state claimed that such evidence was irrelevant, "likely to confuse the jury," and amounted to improper argument.

Defendant opposed the state's motion arguing that (1) the evidence was relevant to the issue of defendant's intent, (2) the evidence was relevant to establish the defense of reliance on the advice of counsel and on an official interpretation of the law, (3) the probative value of the evidence was so high that no basis existed to exclude it on grounds of confusion, (4) the evidence was not hearsay, or alternatively, was admissible as an exception to the hearsay rule, and (5) the evidence had to be admitted to protect defendant's constitutional right to present a defense.

The district court granted the state's motion to exclude the evidence and barred defendant from asserting the defenses of reliance on the advice of counsel and on an official interpretation of the law. The court did not specifically address whether Minnesota recognizes the defenses of reliance on the advice of counsel and on an official interpretation of the law. Instead, the district court concluded that defendant's reliance on these defenses would be unreasonable, as a matter of law, and went on to exclude any evidence relating to the defenses on that basis including Prokopow-

---

1. Defendant's attorney saw a newspaper article about the officers, and requested and obtained a copy of the letter from Prokopowicz.

icz's letter and his civil attorney's testimony.

The issue of certification came up and the district court, agreeing with certification, noted that several other defendants charged in this case were awaiting the outcome of this case. At defendant's request, the district court certified as important and doubtful the questions of (1) "whether the defenses of reliance on advice of counsel and on an official interpretation are available to the Defendant under Minnesota law," and (2) "whether the defenses of reliance on advice of counsel and on an official interpretation are available to Defendant, as a matter of law, given the District Court's finding that any reliance was not reasonable." This appeal follows.

### ISSUES

1. Are the defenses of reliance on advice of counsel and on an official interpretation available to a defendant under Minnesota law?

2. Are the defenses of reliance on advice of counsel and on an official interpretation available to this defendant, as a matter of law, given the district court's finding that any reliance was not reasonable?

3. Did the district court violate defendant's due-process right to present a defense by excluding evidence that he relied on the advice of counsel and on an official interpretation of the law?

### ANALYSIS

■ We first consider our jurisdiction over certification by the district court. "In a criminal case, upon proper motion, the district court may certify 'any question of law ... which in the opinion of the judge is so important or doubtful as to require a decision of the Court of Appeals.'" Minn. R.Crim. P. 28.03. "The certification should be carefully and precisely framed so as to present distinctly and clearly the question of law involved...." *Thompson v. State*, 284 Minn. 274, 277, 170 N.W.2d 101, 103 (1969). The function of the certification procedure is not to present a hypothetical question or to secure an advisory opinion. *Id.* "A question of law should not be presented until the record is developed to the point where the question is relevant and presents a substantial issue." *State v. Mireles*, 619 N.W.2d 558, 563 (Minn.App. 2000), *review denied* (Minn. Feb. 15, 2001).

■ Where an appeal would otherwise not be allowed by rule, appellate courts may grant discretionary review to certified questions when the parties have briefed the issues, the record is adequately developed, and the issue is important and doubtful. *See State v. Childs*, 269 N.W.2d 25, 26 n. 1 (Minn.1978) (stating that although an order denying a motion to suppress evidence is not an appealable order, discretionary review is available when the parties have briefed the case, the record is adequately developed, and the evidence in question is important to the prosecution's case).

The first certified question is properly before us, even though the district court did not technically rule on the question, but, instead, found other grounds to rule against defendant. *See State v. Reps*, 302 Minn. 38, 42, 223 N.W.2d 780, 783–84 (1974) (stating that "[w]hile [review without an order] may not have conferred appellate jurisdiction in the traditional sense, we think it is nevertheless sufficiently appellate in nature, regardless of a trial court ruling, to warrant our determination."). The second certified question is also properly before us. The district court concluded that defendant's reliance on these defenses was unreasonable and excluded any evidence relating to the defenses on that basis. Neither question presents a hypo-

thetical situation or calls for an advisory opinion. Our ruling will have an immediate and substantial effect on the other defendants and on the prosecution of this case, which has been stayed pending our determination. In addition, both questions are presented well and do not require us to assume a set of facts not in the record.

## I.

### Recognized Defense

Defendant argues that reliance on the advice of counsel and on an official interpretation of the law are recognized defenses in Minnesota. At oral argument, the state conceded that good-faith reliance on the advice of counsel could be relevant to the issue of intent when intent is an element of the charged crime. The state agrees that reliance on an official interpretation of law can be a defense if the reliance is made in good faith. The district court did not rule on these two arguments.

### A.  Reliance on the Advice of Counsel

Although Minnesota has not expressly recognized the defense of reliance on the advice of counsel, it has recognized that good-faith reliance on the advice of professionals is a defense to a specific intent crime. *See, e.g., State v. Ruud,* 259 N.W.2d 567, 579 (Minn.1977) (holding that district court did not err by refusing to instruct jury that defendant's reliance on accountant's advice negated their intent to commit theft and present false claims to a public body, because defendants failed to fully and fairly disclose all of their actions to their accountant); *State v. Peterson,* 463 N.W.2d 308, 310–11 (Minn.App.1990) (holding that defendant could not assert defense of reliance on instructions of tow-truck operator in prosecution for driving vehicle in an unsafe condition, because specific intent was not an element of the offense).

We note that other jurisdictions recognize the defense of good-faith reliance on the advice of counsel when intent is an element of the crime charged. *See United States v. Urfer,* 287 F.3d 663, 665–666 (7th Cir.2002) (holding that there is no "advice of counsel" defense, but stating that "if a criminal statute requires proof that the defendant knew he was violating the statute in order to be criminally liable for the violation, and it is unclear whether the statute forbade his conduct, the fact that he was acting on the advice of counsel is relevant because it bears on whether he knew that he was violating the statute"); *Rea v. Wichita Mortgage Corp.,* 747 F.2d 567, 576 (10th Cir.1984) (stating that reliance on the advice of counsel is a valid defense in both civil and criminal cases and that, although not an absolute defense, it is relevant to determining "a defendant's good faith, willfulness, or illegal intent"); *United States v. Civella,* 666 F.2d 1122, 1126 (8th Cir.1981) (stating that the advice of counsel can negate willfulness but does not constitute an absolute defense); *United States v. McLennan,* 563 F.2d 943, 946 (9th Cir.1977) (holding that reliance on the advice of counsel is relevant to the issue of intent if the defendant gave his or her attorney all of the facts and counsel specifically advised the course of action taken by the defendant); *United States v. Diamond,* 430 F.2d 688, 694–95 (5th Cir.1970) (stating that reliance on the advice of counsel as a defense to the intent of mail fraud available if defendant acted in good faith).

While continuing to argue that the advice of defendant's civil attorney was irrelevant, the state conceded that good-faith reliance on the advice of counsel could be relevant to the issue of intent when intent is an element of the charged crime. The state did argue that if defendant's attorney's advice was, for instance, "this is breaking the law but you can go ahead and

do it as I think you can get away with it," or something to that effect, the reliance would not be in good faith and not relevant on the issue of intent. The state conceded, however, that if defendant's attorney had made a good-faith determination that defendant's actions were legal and later it was determined that his research was flawed, his advice would be relevant on the issue of intent. However, the state still continues to claim that counsel's advice is irrelevant because the state argues that "scienter" is an element of conspiracy on the two counts against defendant, but insisted that scienter goes to the "intent to commit the specific bad act that is an essential element of the crime," not the conspiracy itself. The defense argues that scienter is an essential element of conspiracy on the two counts against defendant and that the state is required to prove "intent to conspire." We conclude the state is required to prove "intent to conspire." Thus, the attorney's advice, if in good faith, is relevant on the issue of intent to conspire to procuring unlawful voting and to commit forgery.

■ We conclude that good-faith reliance on the advice of counsel is an available defense when intent is an element of the charged crime.

### B. Reliance on an Official Interpretation of the Law

■ Many jurisdictions, including Minnesota, have recognized the defense of good-faith reliance on an official interpretation of the law, including official actions or pronouncements regarding a criminal charge. *See State v. McKown*, 461 N.W.2d 720, 725 (Minn.App.1990) (concluding that state had previously approved certain conduct and then unconstitutionally prosecuted defendants for the same conduct), *aff'd*, 475 N.W.2d 63 (Minn.1991), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d

786 (1992); *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir.1987) (stating that in asserting reliance on an official interpretation of law "the defendant must show that he relied on the false information and that his reliance was reasonable."); *Cox v. Louisiana*, 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965) (concluding that the state could not prosecute protestors for violating a statute prohibiting demonstrations near courthouse where a police official informed protestors they could picket there); *Raley v. Ohio*, 360 U.S. 423, 437, 79 S.Ct. 1257, 1266, 3 L.Ed.2d 1344 (1959) (concluding that the state could not prosecute individuals for refusing to testify before a legislative committee when committee members informed those individuals they could invoke the state privilege against self-incrimination). This defense is typically offered to negate the intent element of a charged crime. On this issue, the state agrees that good-faith reliance on an official interpretation of the law is an available defense when intent is an element of the charged crime.

Accordingly, we answer the first certified question in the affirmative.

## II.

### Reasonableness

We next address the second certified question. In this case, the district court concluded that defendant's reliance on the advice of counsel and on an official interpretation of the law was unreasonable as a matter of law, and, thus, could not be available as a defense.

### A. Reliance on the Advice of Counsel

In excluding evidence that defendant relied on the advice of his attorney, the district court stated:

[Defendant's civil attorney] has been silent to this point and although Defendant claims he will waive his privilege, it is not hard to imagine [his attorney] asserting his Fifth Amendment right and refusing to testify. Or, he may be reluctant to admit that he advised his client on the basis of a letter that did not even mention the charges with which the client is now charged. Third, the potential for collusion is enormous.

The district court's conclusion that defendant's reliance on the advice of his attorney was unreasonable is speculative. At the time it made its ruling, the court was unaware of the contents of defendant's civil attorney's testimony. It was premature to exclude defendant's attorney's testimony without first determining if such testimony was relevant to defendant's intent to procure unlawful voting and to commit forgery. The district court erred in concluding, at this stage, that any reliance by defendant on his attorney's advice was unreasonable as a matter of law. The district court has to wait for the substance of defendant's attorney's advice to be disclosed before making a determination as to relevancy.

We need to carefully explain our ruling. We have concluded that a specific "intent to conspire" is an essential element of the crimes charged. Thus, we have concluded that the defendant has the right to attempt to negate his criminal intent by offering evidence of his good-faith reliance on the advice of counsel and his good-faith reliance on an official interpretation of the law. This does not mean that under any and all circumstances the defendant can offer any evidence he wants. Both parties in a criminal case are subject to the standard rules of relevancy and evidence. *See generally, State v. Buchanan,* 431 N.W.2d 542, 550 (Minn.1988) (stating that defendant's constitutional right to give testimo-

ny must be balanced against relevancy requirement); *State v. Wolf,* 592 N.W.2d 866, 868 (Minn.App.1999) (stating that in a criminal case defendant has right to present a defense in accordance with the rules of evidence); Minn. R. Evid. 401 (stating that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") At this stage, on this record, the defendant has met his burden of production and relevancy. A trial ruling on the relevancy of defendant's civil attorney's testimony cannot be had until the testimony is proffered. The district court may conduct its determination on an in camera basis and/or pursuant to sworn affidavits, or some other reasonable means, that will provide a sufficient record if meaningful appellate review is to be sought later on.

Perhaps to explain, we will put this in the context of an issue, of which there is no doubt as to its relevancy and its availability to a criminal defendant. The State of Minnesota recognizes the defense of self-defense. *See* Minn.Stat. § 609.06 (2002) (authorizing use of reasonable force in self-defense); Minn.Stat. § 609.065 (2002) (allowing the justifiable taking of a life in self-defense). Thus, a district court could never say that "there isn't any self-defense in any court; I don't believe in it." But having said that, a defendant seeking a jury instruction on self-defense has to somehow get into evidence enough facts for the district court to decide that a jury instruction on self-defense is warranted. For instance, if a criminal defendant were on trial for the murder of his father-in-law, he would not be entitled to an instruction on the defense of self-defense if the only evidence offered was his own testimony that he had a dream that his father-in-law was thinking about hurting him. So based

on that dream, he loads his shotgun, drives over to his father-in-law's house in the middle of the night, sneaks into the house, finds his father-in-law sleeping in bed, and shoots him in his sleep at point-blank range. If the only evidence a defendant could come up with was this version of what he dreamed, he would not get a jury instruction on self-defense, even though self-defense is, without question, available to defendants. The built-in restriction is that it is available to defendants where there is at least some modest showing of relevance. So it is here. As an appellate court, we are not forecasting advisory rulings on evidentiary issues that may or may not come up during the defendant's trial. What we are doing is answering the two certified questions the district court posed to us in an affirmative manner, pointing out that specific intent is an essential element of the crime of conspiracy and that defendant;'s offered evidence is relevant on the issue of his intent. Defendant's attorney's proffered evidence has yet to be established. It is our intent in answering the two certified questions in the way that we have to give guidance to the district court when it hears the testimony of defendant's attorney.

## B. Reliance on an Official Interpretation of the Law

In concluding that defendant's and his attorney's reliance on Prokopowicz's letter was unreasonable the district court stated:

First, any reliance by the Defendant or [his civil attorney] on the letter written by Mr. Prokopowicz is, in the view of this Court, unreasonable. Again, the letter deals only with Ch. 260 and not with Ch. 609. The two sets of circumstances—members of the M.P.D. registering to vote where they work rather than where they live and nearly one hundred persons claiming to live in an adult men's club in order to vote in a Mayoral race—are entirely different.

The court also noted that defendant's case was different from *McKown* because the defendants in *McKown* relied on a statute, whereas the defendant in this case relied on a letter from a prosecutor on an unrelated matter.

■ Prokopowicz's letter stated:

Our preliminary investigation indicates that all the officers were eligible to vote at the time of the registration. There is no evidence to suggest that the officers improperly registered for the purpose of voting in more than one precinct or misrepresented their identity when attempting to register to vote. In some instances, officers reported that given the nature of their work and concern for the safety of their family, they registered in the precinct where they worked to avoid having their home addresses made public. Therefore, we find no criminal violation of Minn.Stat. § 201.054.

The district court prematurely excluded this letter and any testimony by defendant's civil attorney regarding this letter. Even though defendant did not rely on a statute, as in *McKown*, he relied on a prosecutor's opinion regarding similar charges. A reasonable person reading the Prokopowicz letter could form a good-faith opinion that under certain circumstances a person may register where the person works to keep his or her home address secret. That rationale easily extends to an ecdysiast (stripper) working at an adult men's club as well as to law enforcement. An ecdysiast may also feel a profound need to keep private her home address.

The district court improperly concluded that defendant's and his attorney's reliance on Prokopowicz's letter was unreasonable, as a matter of law.

We answer the second certified question in the affirmative.

## III.

**Due Process**

■ Defendant also argues that the district court violated his due-process right to present a defense and explain his conduct by excluding evidence relating to his defenses that he acted in good-faith reliance on the advice of counsel or ·on an official interpretation of the law. Although defendant presented this argument to the district court, the court did not address it, and the state chose not to address this argument in its brief. We conclude that whether reliance on the advice of counsel or on an official interpretation of the law, evidence of reliance is admissible as a part of defendant's due-process right to explain his conduct.

■ Criminal defendants have a due-process right to give the jury an explanation of their conduct even when their motive *is not* a valid defense. *State v. Rein*, 477 N.W.2d 716, 719 (Minn.App.1991), *review denied* (Minn. Jan. 30, 1992); *see State v. Wiltse*, 386 N.W.2d 315, 318 (Minn. App.1986) (finding reversible error where the district court excluded defendant's explanation for being present at the scene of the alleged crime), *review denied* (Minn. June 30, 1986). When a defendant alleges a violation of his constitutional rights, evidentiary challenges are reviewed under an abuse-of-discretion standard. *State v. Profit*, 591 N.W.2d 451, 463 (Minn.1999). "[E]very criminal defendant has the right to be treated with fundamental fairness and 'afforded a meaningful opportunity to present a complete defense.'" *State v. Richards*, 495 N.W.2d 187, 191 (Minn.1992) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). The Minnesota Supreme

Court has considered "it fundamental that criminal defendants have a due process right to explain their conduct to a jury." *State v. Brechon*, 352 N.W.2d· 745, 751 (Minn.1984).

■ The district court improperly excluded all attempts by defendant to explain his actions. Assuming that defendant relied on the advice of his civil attorney about a letter concerning alleged voter-registration fraud on the part of Minneapolis police officers, he had a right to explain this to the jury. Both the letter and defendant's civil attorney's testimony were relevant to explain defendant's conduct and to negate his intent to conspire to procure unlawful voting and to commit forgery.

The district court's concern about collusion is speculative and better left for cross-examination and a determination by the fact-finder. Concern about an issue does not justify denying a defendant his right to present evidence on the issue of intent. Criminal defendants have a due-process right to explain the reasons for their conduct, even if the explanation is not a perfect defense. *See Rein*, 477 N.W.2d at 719. We can only note that any time two or more law-enforcement personnel, or two or more co-defendants, or two or more witnesses for a defendant have essentially the same testimony, "you could have a concern about collusion." However, that cannot denigrate any witness's right to take the stand, be sworn, and recall evidence as best they can. When. criminal defendants do not waive a jury, the issue of their credibility and the credibility of their witnesses is for the jury, not the trial judge.

■ To prove conspiracy, the state must prove beyond a reasonable doubt (1) an agreement with another to commit a crime, and (2) an overt act in furtherance of the conspiracy. *State v. Olkon*, 299

N.W.2d 89, 104 (Minn.1980). The required mental state for the crime of conspiracy is intent, not knowledge. *State · v. Brown*, 455 N.W.2d 65, 69 (Minn.App.1990), *review denied* (Minn. July 6, 1990). "A conscious and intentional purpose to break the law is an essential element of the crime of conspiracy and consists of two distinct crimes: the conspiracy and the substantive crime, which is the object of the conspiracy." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001). "Criminal liability for conspiracy is predicated upon personal guilt....A person cannot become a party to or criminally responsible for the criminal acts of another unless he knows their true character." *State v. Burns*, 215 Minn. 182, 188, 9 N.W.2d 518, 521 (1943) (citations omitted). For example, "[a] defendant cannot be found guilty of conspiracy to cheat and defraud unless it be shown that he and the other alleged conspirators had a common purpose to cheat and defraud and each of them understood that the others had such purpose." *Id.* at 189, 9 N.W.2d at 521 (citations omitted).

■■■■■■ To satisfy due process, the state must prove every element of a crime beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 204, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281 (1977); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn.1995). The state may not impose on the defendant the burden of persuasion to disprove or negate an element of the crime. *State v. Hage*, 595 N.W.2d 200, 204 (Minn.1999). "Accordingly, if the mitigating circumstance or issue disproves or negates an element of the crime charged, the greatest burden a state may impose upon a defendant is that of shouldering the burden of production." *Id.* at 205; *see State v. Charlton*, 338 N.W.2d 26, 30–31 (Minn. 1983) (defendant had only burden of pro-

duction regarding claim of duress because otherwise he would be forced to· disprove or negate his intent to commit robbery where intent was element of crime). A defendant meets this lesser burden by making "a prima facie showing that the proffered defense is an issue in the case," at which point the burden of persuasion reverts to the state to prove beyond a reasonable doubt that the defense does not exist.' *Hage*, 595 N.W.2d at 205.

■■■■ Defendant satisfied his burden of production for his proffered defenses. As stated before, "a conscious and intentional purpose to break the law is an essential element of the crime of conspiracy." *See Kuhnau*, 622 N.W.2d at 556. The state conceded that an attorney's advice to a defendant might be offered to negate the essential element of a crime. Because intent to conspire is an essential element of the crime of conspiracy, the evidence presented by defendant may negate his intent to conspire to procure unlawful voting and commit forgery.

Defendant introduced the Prokopowicz letter, where Prokopowicz gave an opinion that Minneapolis police officers that registered to vote where they worked, because of privacy concerns, rather than where they lived, did not violate voter-registration and election laws. Defendant's affidavit stated that defendant's civil attorney showed defendant a copy of Prokopowicz's letter and a book containing Minnesota's voting and election laws. The affidavit also stated "[w]ith [his attorney's] counsel and advice, and relying on a review of Minnesota's election laws and the letter by Mr. Prokopowicz, I and several of my employees devised a plan to get people to register to vote using Jakes as a residence." If defendant received advice from his attorney that it was acceptable to register people using his business address as their place of residence, this evidence

could negate his intent to commit conspiracy to procure unlawful voting and forgery. That evidence does not "have to" negate intent, but it could, depending on how the jury saw the testimony. That is a decision for the fact-finder. *See* Minn.Stat. § 609.075 (2002) (stating that while voluntary intoxication is not an absolute defense, "when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.").[2] This close parallel is the standard jury instruction on intoxication, when the charged crime is a crime involving specific intent. Jurors do not have to regard a defendant's voluntary intoxication as a complete defense. They might not even take it seriously on the issue of whether the defendant was too drunk to form a specific intent. But a defendant is entitled to that instruction and can, at least, argue his intoxication as bearing on his lack of intent. So it is here. This evidence could show that defendant acted in good faith when he relied on the advice of his attorney and on Prokopowicz's opinion about officers who had voted in precincts where they worked rather than where they lived. The state did not attempt to negate this evidence but simply sought to exclude it, arguing relevance, and argued that "it could confuse the jury." We do not understand the argument. First, "confuse the jury" does not appear in the rules of evidence. The state may be referring to relevancy, but we have already concluded the defendant's version

of what happened is relevant. We see no reason why this evidence should confuse the jury any more than the state does from time to time when they leave juror's eyes glazed with hours and days of technical testimony such as can occur in criminal trials involving DNA evidence, expert testimony on ballistics, bodily fluids, etc., or a complicated securities fraud criminal case where expert after expert testifies about SEC regulations. If one side or the other in a criminal case "confuses the jury," that side might suffer. That is up to the jury.

### DECISION

We answer the first certified question in the affirmative. Good-faith reliance on the advice of counsel and/or on an official interpretation of the law is an available defense to a defendant charged with a specific intent crime. We answer the second certified question in the affirmative. The defenses are available to Jacobson given the district court's premature conclusion that any reliance was unreasonable. The advice of defendant's civil attorney is available on the issue of intent as long as it meets the basic threshold of relevancy.

Jacobson has a due-process right to present a defense and explain his conduct. Jacobson satisfied his burden of production when he offered evidence that he relied on the advice of his attorney and on an official interpretation of the law.

**Reversed and remanded.**

---

2. The standard jury instruction regarding voluntary intoxication states:

It is not a defense to a crime that the defendant was intoxicated at the time of the act if the defendant voluntarily became intoxicated. However, if it is an element of a crime that the defendant had a particular intent, you should consider whether the defendant was intoxicated, and if so, whether

the defendant was capable of forming the required intent.... However, the State must prove beyond a reasonable doubt that the defendant had the required intent.
10 *Minnesota Practice*, CRIMJIG 7.03 (1999); *see also State v. Pilcher*, 472 N.W.2d 327, 337 (Minn.1991) (encouraging the use of this instruction over other instruction language).